STATE OF TEXAS v. TRINITY & BRAZOS VALLEY· RAILWAY COMPANY ET AL.

Decided June 16, 1909.

**1.—Railways—Contract for Use of Track—Railroad Commission.**

The rights of a railway operating its trains partly over the track of another company, under contract with it, are such only as given by the contract. If the company owning the road performs its duties to the public with respect to supplying adequate train service to all intermediate stations, it is not within the power of the Railroad Commission to require the company permitted by ´it to run over its track to stop its trains or carry freight and passengers to and from such intermediate stations, in contravention of the contract, which gave it right to do business only between the terminal points of the line over which such contract gave it trackage rights.

**2.—Same.**

A contract, by which one railway grants to another the right to run trains over a portion of its track, on condition that it does not stop them or do local business at intermediate stations, is not invalid if it contains nothing affecting the obligation of the grantor to render the service owing to the public at such points. But if it should be held invalid, it was still beyond the power of the Railroad Commission to change it into a contract the parties would not have made by requiring the company acquiring such trackage rights by the contract to operate its trains in violation of the conditions on which its rights were granted.

**3.—Railways—Passenger Trains.**

Article 4580, Rev. Stats., sec. 2, as amended by Act of 1903, page 183, requiring railway companies to operate at least one passenger train a day over their lines of road applies to the company owning the road and not to one merely obtaining by contract trackage rights enabling it to operate trains thereon.

**4.—Railroad Commission—Operation of Trains—Reasonable Service.**

A railway company furnishing upon its road by its own trains, ample service for the transportation of freight and passengers can not be required by order of the Railroad Commission to permit additional service to be rendered by another company permitted by contract to operate trains over a portion of its line.

Appeal from the District Court of Travis County. Tried below before Hon. Chas. A. Wilcox.

*R. V. Davidson,* Attorney-General, and *James D. Walthall,* Assistant, for appellant.—The Trinity & Brazos Valley Railway Company is a railway corporation created under the laws of this State, and authorized by its charter to construct and operate a line of railroad between Waxahachie and Dallas. The said company operates

its trains between said points over the track of the Missouri, Kansas & Texas Railway Company of Texas, and it is the duty of the said Trinity & Brazos Valley Railway Company to furnish to the people residing at the intermediate stations between Waxahachie and Dallas reasonable freight and passenger service, and the Railroad Commission of Texas has authority under the law to require it to do so. Constitution of Texas, art. 10, sec. 2; Rev. Stats., art. 4494, as amended by the Act of 1903 (Acts 1903, First Called Session, p. 21); Rev. Stats., art. 4580, as amended by the Act of 1903 (Acts 1903, p. 183); Rev. Stats., art. 4579; Gulf, Colorado & Santa Fe Railway Co. v. Newell, 73 Texas, 334; San Antonio, etc., Ry. Co. v. Wilson, 19 S. W., 910; Rev. Stats., art. 4576, as amended by the Act of 1901 (Acts 1901, p. 265).

The appellee Trinity & Brazos Valley Railway Company is a railroad corporation created under the laws of this State and authorized to construct and operate a line of railroad between Waxahachie, Texas, and Dallas, Texas, and under its charter it operates its trains for the transportation of freight and passengers between said points, using for that purpose the tracks of the Missouri, Kansas & Texas Railway Company of Texas, and the said Trinity & Brazos Valley Railway Company is in duty bound to render reasonable and adequate passenger and freight service at the intermediate stations between Waxahachie and Dallas, and it can not relieve itself from such duty by contracting with the said Missouri, Kansas & Texas Railway Company of Texas not to stop its trains at said intermediate stations. Union Pacific Ry. Co. v. Chicago, R. I. & P. Ry. Co., 51 Fed., 317; Newell v. Railway Co., 73 Texas, 338; Railroad Commission v. H. & T. C. Ry. Co., 90 Texas, 340; International & G. N. Ry. Co. v. Railroad Commission, 99 Texas, 332; State of South Dakota v. C., St. P. M. & O. Ry. Co., 47 L. R. A., 569; State of Florida v. A. C. L. R. Co., 13 L. R. A., 320; Commonwealth v. L. & N. Ry. Co., 85 S. W., 712; Alford v. Chicago, R. I. & P. Ry. Co., 2 I. C. R., 711.

*Andrews, Ball & Streetman,* for appellee, Trinity & Brazos Valley Railway Company.—The contract between the defendants was valid and binding on each. The Valley Company acquired no rights, privileges, franchises or immunities upon the tracks or facilities of the Texas Company except those expressly granted in the contract. The Railroad Commission had no power or authority to enlarge the contractual rights nor to grant to the Valley Company any right not granted in the contract, and the Commission had no power to expropriate the tracks of the Texas Company or impose additional servitudes upon them for the benefit of the Valley Company. The Texas Company had the absolute and unqualified right to deny to the Valley Company any use of its tracks and to exclude them therefrom; it therefore had the right to admit it to the use of such tracks upon such conditions and with such limitations as the contracting parties saw fit to agree to. Constitution, art. 10, sec. 1; Railway Co. v. Railway Co., 92 Texas, 162; Railway Co. v. Railway Co., 67 S. W., 525; Wharf Co. v. Railway Co., 81 Texas, 494; Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 163 U. S., 564; Chicago

Ry. Co. v. Ry. Co., 143 U. S., 596; State of Iowa v. Ry. Co., 33 Fed., 391; 4 Elliott on Railroads, par. 2281; Pittsburg Ry. Co. v. Martin, 61 Ind., 539; Croutch v. Railway Co., 25 Eng. L. & Eq., 287; Wheeler v. Railway Co., 31 Calif., 46; Pitlock v. Wells-Fargo Co., 109 Mass., 452; 2 Elliott on Railroads, 491, 589; Michigan Ry. Co. v. Railway Co., 87 N. W., 271; People v. Rome, 8 N. E., 369; Railway Com. v. Oregon Nav. & Ry. Co., 19 Pac., 706; Davis v. Railway Co., 92 Texas, 64; People v. Board of R. Com., 43 N. E., 163; Railroad Com. v. Houston & T. C. R. Co., 90 Texas, 340; Railway Co. v. Adams, 38 So., 348; Railway Co. v. State, 34 So., 401; 2 Sutherland on Stat. Cons., sec. 564; 11 Cyc., 771; 8 A. & E. Enc., 38; Alford v. Railway Co., 3 Int. Commerce Com., 519; 4 Elliott on Railroads, 221; Pittsburg Ry. Co. v. Morton, 61 Ind., 539; Crouch v. Railway Co., 25 Eng. L. & Eq., 287; Wheeler v. Ry. Co., 31 Calif., 46; Pitlock v. Wells-Fargo, 109 Mass., 452; Hunter v. Railway Co., 76 Texas, 195.

The order of the Railroad Commission is in violation of the Constitution of the United States, and especially in violation of article 1, section 10, subdivision 1 of said Constitution, which provides in effect that no State shall pass or enforce any law impairing the obligation of contracts, for that if the order of the Railroad Commission in this case should be enforced it would impair the obligation of a contract between this defendant and its codefendant, which prohibits this defendant from transacting business at stations intermediate between Dallas and Waxahachie.   Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co., 163 U. S., 564; Black's Const. Law, 607; Tiedman, Police Power, secs. 142, 191, 589; Freund, Police Power, sec. 555; Eddy on Combinations, sec. 681; Muggler v. Kansas, 123 U. S., 661; Railway Co. v. Smith, 173 U. S., 685; Reagan v. Farmer's Loan & Trust Co., 154 U. S., 362; State v. Chittenden, 17 N. W., 517; 2 Tiedman St. & Fed. Control, 976; Motley v. Railway Co., 150 Fed., 407; Hill v. State, 11 So., 97; Cooley's Const. Limit., 291; Ward v. Schrank, 39 L. R. A., 569; Bedford v. Bldg. & Loan Assn., 181 U. S., 320; Loan Assn. v. Hardy, 86 Texas, 612; Railway Co. v. Coal Co., 79 Ill., 121; Abercrombie v. Baxter, 44 Ga., 361; Woodruff v. State, 3 Ark., 285; Bank v. State, 12 Miss., 439; Hannum v. Bank, 41 Tenn., 398; Randall v. Sackett, 77 N. Y., 480; Patton v. Ashville, 109 N. C., 685; Harrison v. Styers, 74 N. C., 290; Lins v. Ins. Co., 8 Mo. App., 563; Latham v. Whitehurst, 69 N. C., 33; Jordan v. Weimar, 45 Iowa, 65; Taxing cases, 13 Fed., 755; Thompson v. Cobb, 95 Texas, 147; Grand Rapids v. Lake Shore Railroad Co., 89 N. W., 932; Graham v. Tolson, 200 U. S., 249; Vicksburg v. Vicksburg Water Co., 202 U. S., 458; Railway Co. v. Ellis, 70 Texas, 307.

*Coke, Miller & Coke, R. C. Foster, A. H. McKnight* and *Fiset & McClendon,* for appellee, The Missouri, Kansas & Texas Railway Company of Texas.—The order of the Railroad Commission of Texas here involved is in violation of article 1, section 16, of the Constitution of the State of Texas, which provides that no law impairing the obligation of contracts shall be made, because the said order, if

enforced, would impair the obligation of the contract between this defendant and its codefendant, by virtue of which alone the latter has any rights in, to or upon this defendant's tracks and facilities, and under the terms of which its codefendant is prohibited from doing or performing the things the said order attempts to require it to do and perform. Union Pac. Ry. Co. v. C., R. I. & P. Ry. Co., 163 U. S., 564; Alford v. Railway Co., 3 I. C. C. Reports, 519.

The order of the Railroad Commission of Texas here involved is null and void, because in violation of that provision of the Fourteenth Amendment to the Constitution of the United States which provides that no State shall deprive any person of property without due process of law, and in violation of that provision of article 1, section 19, of the Constitution of the State of Texas which provides that no citizen of this State shall be deprived of property, privileges or immunities, except by due course of the law of the land, in that the said order, if enforced, would take from this defendant the right to the exclusive use, control, management, supervision and operation of its tracks and terminal facilities between Dallas and Waxahachie, and would confer upon its codefendant, the Trinity & Brazos Valley Railway Company, rights and privileges in, to and upon said tracks and terminal facilities without this defendant's consent. Sabine & E. T. Ry. Co. v. G. & I. Ry. Co., 92 Texas, 162.

The order of the Railroad Commission of Texas complained of is null and void because it is in violation of that provision of article 1, section 17, of the Constitution of Texas, which provides that no person's property shall be taken, damaged or destroyed for or applied to public use, without compensation being made, unless by the consent of such person, in that the said order, if enforced, would take from this defendant its property without its consent and apply the same to a public use without making compensation therefor.

The said order of the Railroad Commission of Texas is in violation of article 10, section 1, of the Constitution of Texas, which specifies the rights one railroad company can acquire, as a matter of right, with reference to the property of another, and by implication prohibits the conferring upon one railroad company, without the consent of another, of any rights in and to the latter's property, other than those therein named, in that the said order attempts to take from this defendant the exclusive right to the use, control, management, supervision and operation of a part of its tracks and facilities, and attempts to confer upon its codefendant certain rights and privileges in, to and upon said tracks and terminal facilities, without this defendant's consent, and contrary to the provisions of the contract between them. Sabine & E. T. Ry. Co. v. G. & I. Ry. Co., 92 Texas, 162; Suburban Ry. Co. v. Railroad Co., 61 N. E., 1090; Illinois Cent. Ry. Co. v. Railway Co., 13 N. E., 140; 15 Cyc., 618.

That part of the order which requires the Trinity & Brazos Valley Railway Company to operate one passenger train and one freight train each way each day over the tracks in question, and to do local business in connection with the same at the intermediate stations between Dallas and Waxahachie, is null and void, because there is no public necessity or demand for such service, and there is no law

in this State requiring the same or conferring upon the Railroad Commission of Texas the power to demand it.

If it be admitted that any duty rests upon the Trinity & Brazos Valley Railway Company to perform adequate passenger and freight service for people living between Dallas and Waxahachie, the existence of this duty does not confer upon it the right to use the tracks and facilities of this defendant in the performance of such duty without this defendant's consent and in violation of the contract between them, nor does it give to the Railroad Commission of Texas any power or authority to confer upon the Trinity & Brazos Valley Railway Company the right to use this defendant's tracks and facilities in performing such duty, or to deprive this defendant of the right to say upon what terms' and conditions its tracks and facilities shall be used by any other railroad company, if at all. Union Pac. Ry. Co. v. C., R. I. & P. Ry. Co., 163 U. S., 564; Union Pac. Ry. Co. v. C., R. I. & P. Ry. Co., 51 Fed., 309; Michigan Cent. Ry. Co. v. Railway Co., 87 N. W., 271; Alford v. Railway Co., 3 I. C. C. Reports, 519.

RICE, Associate Justice.—The Attorney-General brought this suit in behalf of the State at the instance of the Railroad Commission against the Trinity & Brazos Valley Railway Company, and the Missouri, Kansas & Texas Railway Company of Texas, the former for convenience, hereinafter called the Valley Company, and the latter the Texas Company, for the recovery of penalties against each -of them for the alleged violation of and refusal to comply with an order of the Railroad Commission, as well as for a mandatory injunction against the Valley Company, and an injunction against the Texas Company, restraining it from interfering with the Valley Company in the performance of said order.

It appears from the pleadings that prior to the institution of this suit the Valley Company was originally incorporated for the purpose of constructing and operating a line of railway from Hillsboro, in a southeasterly direction, through the intervening counties, to the city of Galveston, and from Hillsboro, in a northwesterly direction, through the intervening counties, to the city of Ft. Worth, and that by a subsequent amendment to its charter it was authorized to construct and operate a railroad from Teague, in Limestone County, to the city of Dallas. That the first two lines were completed and in operation, but that the latter was only completed and in operation from Mexia, in Limestone County, to the city of Waxahachie, in Ellis County; that the Texas Company was operating a line of railway from Dallas to Waxahachie, with the following intermediate stations thereon, to wit: Sterrett, Red Oak, Lancaster, Ball, Honey Springs and Newland, and that the Valley Company, desiring to reach Dallas over the line of the Texas Company, by contract with said company obtained the right of so doing over the road of the Texas Company, from Waxahachie to Dallas, but that notwithstanding its contract and agreement whereby it was granted the privilege and right to operate its trains over the line of the Texas Company between said cities, it had wholly failed and refused to stop and

conduct a passenger and freight business at said intermediate stations; that on the 13th of November, 1907, the Railroad Commission of Texas promulgated an order requiring said Valley Company to run at least one freight and one passenger train each way each day, stopping at each of said intermediate stations for the accommodation of passengers and for the receipt and discharge of freight thereat, and further ordered that the Texas Company abstain from interfering with, or in any manner preventing, the observance of said order, but it alleged that both of said companies violated said order of said Commission, the Valley Company by failing to stop its trains at said intermediate stations for the purposes indicated, and the Texas Company by prohibiting and preventing the Valley Company from so doing.

The Valley Company answered by numerous special exceptions, a general denial and special answer, the substance of which we will attempt to outline, adopting the following statement from appellee's brief: "By the eleventh paragraph of its answer it pleaded the contract and agreement between the two defendants, especially alleging that the Valley Company had no right, privilege or franchise upon the tracks of the Texas Company, except those granted in that contract, and that the Railroad Commission had no power or authority to grant to the Valley Company any additional rights, privileges or immunities, or to take from the Texas Company any such rights, privileges or immunities, or to impose upon its tracks on behalf of the Valley Company any servitude not expressly consented to in said contract by the Texas Company, and that section 17 of article 3 of said contract expressly prohibited the Valley Company from transacting any business at intermediate stations between Dallas and Waxahachie, and especially denied the Valley Company any such privilege, and forbade its trains to be stopped for any purposes other than those enumerated in the contract, such as taking water, passing trains, etc. It denied specially that the Railroad Commission had any power to enlarge the contract and to grant to the Valley Company any rights on the track of the Texas Company other than those contained in the contract. It denied the power of the Commission to expropriate the property of the Texas Company dedicated by it to a public use, and to appropriate it to the Valley Company for another public use.

"In the fourteenth paragraph of its answer it denied that any penalty could be recovered for the specific reason that penalties could be inflicted against railroad companies for a violation of an order of the Railroad Commission, only when such penalty was denounced by the original Act creating the Commission or some lawful amendment thereto, or by some order of the Commission made pursuant to some provision of the original Act creating the Commission, or some valid amendment thereto, which commanded or prohibited the doing of something so commanded or prohibited in the order of the Commission, and that there is no statute in this State that requires the defendant, or any other railroad, to do the things required in said order of the Railroad Commission.

"By the fifteenth clause thereof, after setting out the provision of

said contract relative to the conditions under which the Valley Company was admitted to the use of the Texas Company's tracks, it specially plead that the Texas Company reserved to itself the exclusive supervision, management and operation of the movements of the trains, engines and cars of the Valley Company on said track between Dallas and Waxahachie, and that in pursuance of such reserved rights, the Texas Company refused to permit the Valley Company to stop its trains at said intermediate stations for the purpose of receiving or discharging passengers or freight.

"By the seventeenth paragraph of its answer it alleged that the service between said points for all intermediate stations was not only amply sufficient in all respects, but exceeded the actual requirements; that these facilities were furnished by the Texas Company; that the Valley Company had. never undertaken to furnish any of such facilities, and that there was no necessity for it to do so.

"The Texas Company answered by general demurrer, special exception, general denial and pleaded that the Railroad Commission had no power or authority to make or enforce the order set out in the petition against it, and that the State had no right to recover any penalties against it for its failure and refusal to allow its codefendant to conduct a general freight and passenger business at the intermediate stations on its line of railway between said cities, and further, that it afforded ample facilities for freight and passenger traffic between said cities and all of said intermediate points."

There was a nonjury trial and judgment in behalf of appellees, from which judgment the State has appealed to this court.

It was shown that the Valley Company, after the promulgation of said order and before the institution of this suit, had on two different days operated its freight and passenger trains from the city of Dallas to the city of Waxahachie, without stopping at said intermediate stations between said cities for the purpose of transacting any business, as required by the order of the Railroad Commission above mentioned. It was also shown that the Texas Company operated daily a sufficient number of passenger and freight trains between the cities of Dallas and Waxahachie, stopping at all of said intermediate stations, to accommodate the necessities of the public, and that said service was not only ample, but exceptionally good, and that there had never been any complaint from those local stations about the inadequacy of the service prior to this contract; that all said intermediate stations, except the town of Lancaster, were very small places, some of them not even maintaining depots; and the proof sustained in all other respects the material allegations of the appellee's answers.

Section 17 of the contract between said railroad companies which was in evidence, provides: "Unless compelled by law to do so, the Valley Company shall not carry any traffic originating at or destined to any point on the joint line, other than Dallas or Waxahachie."

*Opinion.*—We deem it unnecessary to consider all the assignments urged and so ably discussed in the briefs of counsel for the respective parties hereto, but will confine ourselves to a consideration of those

questions alone upon which, in our judgment, this case must depend for its determination.

By the first assignment, appellant contends that the court erred in rendering judgment for the appellees, because the Commission had jurisdiction and authority to promulgate and enforce the order involved in this suit; and, second, because said order is not unreasonable or unjust to the defendants or either of them. This contention is, in effect, controverted by the appellees, in that they insist that the contract between the two companies was valid and binding on each, and that by reason thereof the Valley Company acquired no right, privilege, franchise or immunity upon the tracks of the Texas Company, except those expressly granted in the contract, and that the Commission had no power to enlarge the contractual rights of the parties thereto, and grant to the Valley Company any right other than that contained in the contract. And it was further insisted that the Texas Company had the absolute and unqualified right to deny to the Valley Company any use of its tracks and to exclude it therefrom, other than that covered by the agreement. The principal question, then, for consideration, in our judgment, is whether or not the Commission had any authority to make the order in question and require its enforcement. To grant that it did would be to hold that it had the power to enlarge the contract and add provisions thereto which would make it essentially a different contract from the one made by the parties.

We think it must be conceded that all the rights that the Valley Company had over the road of the Texas Company were acquired by virtue of the contract. It certainly had no right by virtue of its charter to operate its trains over the track of the Texas Company, nor do we understand this to be insisted. The appellant seems to treat the contract as a legal and valid one, but seeks to enlarge it and impose a greater burden than contained in the contract as against the Texas Company. If it be conceded that the Valley Company was operating its trains over the road of the Texas Company by virtue of the contract alone (and both parties seem to so regard it), then the only right that it had over the road of the Texas Company was such as was granted by reason of the contract and none other. We do not believe that the State, through the Commission, would have the authority to adopt one portion of the contract and nullify another portion, or impose other conditions than those agreed to by the parties, because if the only right granted to the Valley Company by reason of the contract was that of operating its trains over the road of the Texas Company between Dallas and Waxahachie without stopping at the intermediate stations, then to require it to stop at said stations in the face of a provision of the contract preventing its so doing, would be to say that the Commission could require the Valley Company to do an unauthorized thing, which can not be conceded.

While not undertaking to pass upon the lawfulness of such contracts as the one under consideration, still it is unnecessary to hold that the contract in question was lawful in order to sustain the judgment of the court below, since no matter what view may be taken

as to the validity of the contract, its judgment as to this question must be upheld; because if the contract is not lawful, then the Commission had no right to make any order whatsoever, because its right so to do must be predicated upon the contract, and if the contract were held illegal, this would end the right of the Commission to make any order based thereon.  In this connection, however, it may be of interest to quote from the opinion of Justice Fuller in the case of Union Pac. Ry. Co. v. Chicago, R. I. & Pac. Ry. Co., 163 U. S., 564, wherein a similar question to the one now before the court was discussed and the contract upheld.  The court says:  "By the contract the Rock Island Company gave the Pacific Company the right and privilege to move and operate its trains over the track, and nothing more, and it was provided that the Pacific Company should do no business at intermediate points.  The Pacific Company was to run its trains over the Rock Island Company forty-five miles, and it agreed to pay a fair compensation for doing so.  It was perfectly competent for the Pacific Company to contract to deliver at Lincoln freight and passengers taken up at Omaha, and in carrying out such contract, it could make deliveries in carloads, just as well as in small parcels.  It follows that its cars might be run through, and the fact that under this contract the Pacific Company would haul its cars with its own engines, amounts to nothing more than a mere method of doing business; and when it contracts for deliveries beyond its own line, it must pay the connecting company for its services; that compensation might be fixed by the parties upon any basis they agree to.  Where corporate contract is forbidden by a statute, or is obviously hostile to the public advantage or convenience, the courts disapprove of it, but when there is no express prohibition, and it is obvious that the contract is one of advantage to the public, the rule is otherwise.  Courts may be permitted, when there is no legislative prohibition shown, to put a favorable construction upon such exercise of power by railroad companies as is. necessary to promote the success of the company within its charter powers, and to contribute to the comfort of those who travel thereon, and that principle is applicable to the carrying of through freight and passengers on connecting lines."

We think, however, the principle announced in the case of Alford v. Railway Co., 3 Interstate Commerce Com. Reps., 519, where a similar question to the one involved here was decided adversely to the contention of appellant, is applicable, and we take the following statement of that case from appellee's brief in behalf of the Valley Company:

Alford was a citizen of Lawrence, Kansas, an important business point, containing a population of 12,000.  The Chicago, Rock Island & Pacific Railway Company operated a line of road from Kansas City, in the State of Missouri, through the city of Lawrence to Colorado Springs, and refused to stop its trains at Lawrence or to transact any business at said point, either passenger or freight, for. the accommodation of the people, and it is alleged that such conduct was "unreasonable and subjects said locality to great disadvantage." Other special allegations were made as to the necessities for service,

the refusal to perform it, the convenience that would be afforded by the service of the public's interest therein, and the discrimination occasioned by the refusal to do it. The railroad company answered, in effect, that Lawrence was situated on the line of the Union Pacific Railway; that the respondent operated its trains from Kansas City, in the State of Missouri, by the way of Lawrence, to the city of Colorado Springs; admitted the operation of its trains and the refusal to stop them at Lawrence, but denied that the acts were illegal or unreasonable, upon the ground that it did not own the railway and acquired by contract the right to operate freight and passenger trains on the track of the Union Pacific Railroad Company from Topeka to Kansas City, subject to certain conditions and stipulations in the contract set out and expressed, and that among the agreements therein contained, was one that the respondent "will not carry freight or passengers on such trains to or from any station between Topeka and Kansas City." It alleged, as did this defendant, that a wilful violation of this agreement would result in a forfeiture of its contract. The substance of the agreement, as stated in the report of the case, is in all substantial respects similar to the contract here. It must be borne in mind, however, that the joint track in this case was only thirty miles in length, passes through only one place of as much as 500 inhabitants, and through no place of exceeding 2000 inhabitants, while in the Alford case the joint track extended from Topeka, Kansas, to Kansas City, Missouri, a distance of approximately ninety miles, passing through a number of towns. Judge Cooley, in delivering the opinion of the Commission, said:

"Briefly stated, the case presented is as follows: At the time the contract was entered into the Union Pacific Railway Company had a very direct line of road from Kansas City, Missouri, through the city of Lawrence to Topeka. The Chicago, Rock Island & Pacific Railway Company had a line from Chicago by way of St. Joseph, Missouri, to Topeka, Kansas, and from thence extending through Western Kansas into Colorado. It has also a line from St. Joseph to Kansas City. It could therefore reach Topeka and the points to the west thereof, from Kansas City, by running its trains by way of St. Joseph, but this would be a route so long and so indirect that the company could not expect to do business over it between Kansas City and Topeka and the towns further west with either the promptness or the economy necessary to enable it to meet the competition of other lines. It must, therefore, if it would successfully compete, provide itself with a shorter line. This it might do by constructing a line direct from Kansas City to Topeka; but such a line would parallel that of the Union Pacific, running practically side by side with it, and necessarily competing with it for the local business. Whether the traffic that would be secured would be sufficient to warrant the building of such a line would naturally be the first question to be considered by the respondent company; if it did not promise to be, the thought of obtaining it must either be abandoned or some other means be devised to that end. The Union Pacific Railway Company, on the other hand, it may be assumed, would not

desire its road to be thus paralleled and the interests of the two companies, therefore, led to negotiations which resulted in the agreement which is now before us. By that agreement the Union Pacific says, in substance, to the respondent company: 'We will save you the necessity of building a new line and enable you to accomplish the purpose at which you aim, by giving you the privilege of running your trains over our tracks between Kansas City and Topeka, provided you will undertake not to interfere with our business between those points, and not to make yourselves a common carrier of the local traffic.' The proviso is accepted by the respondent and the contract is entered into. Now it is contended on the part of the complainant that while it was perfectly competent for the parties to enter into such a contract as they have made, so far as concerns its main purpose to give trackage privileges, the proviso which thus undertakes to preclude the acceptance of traffic at points · the trains of the respondent will pass, is repugnant to law, and for that reason must be declared void and the contract enforced as if the proviso were not contained in it.

"In passing upon this contention it is observed, first, that by this contract the Union Pacific Railway Company does not in any respect undertake to narrow its own obligations, or relieve itself of any duties imposed upon it by law. It remains a common carrier to the full extent as before, and the people of Lawrence may enforce against it any right that would have existed if the contract had not been made. We agree fully with the complainant that no common carrier by rail can by any contract with another confer upon the latter any privileges which, either directly or otherwise, can have the effect to limit the rights which any locality or any person would otherwise under its charter, or under common law principles, have against it. But we do not understand that it is claimed in this case that the Union Pacific Railway Company is performing its duties as a common carrier between Kansas City and Topeka any less completely than it was performing them before the contract was made; that it runs a less number of trains or gives to any locality or persons fewer facilities or privileges. If such a claim was made it could not be passed upon without that company being made a party to the proceeding, that it might have opportunity to be heard; and as that has not been done, we may assume, for all the purposes of this case, that the Union Pacific Company, so far as the management of its own business is concerned, is not now found fault with. It is the respondent company, if anyone, that now wrongs the city of Lawrence, by refusing to receive or deliver traffic at that point.

"The grievance of the complainant is that the arrangement as it now exists is unjustly discriminating as against Lawrence, since it gives to Kansas City and Topeka and towns further on, over a good road extending through Lawrence, the advantage of trains which are not allowed to accept or deliver traffic at that city, and that it thereby favors, to the prejudice of Lawrence, the other localities referred to. So far as this discrimination is claimed to operate unjustly, the respondent meets the complainant by the allegation that the arrangement merely accommodates conveniently a business passing between

Kansas City and Topeka, which, without such arrangement, would be taken on trains not passing through Lawrence, and therefore not capable of accommodating its people, so that by no possibility does the contract wrong that city.    Nevertheless it is probably true that the arrangements made between these two railway companies has the effect to benefit to some extent the cities of Topeka and Kansas City, as well as the companies themselves; and this benefit, if it results from privileges which are unjustly or illegally denied to Lawrence, might of itself be proof of unjust discrimination.

"But the main question which concerns us now is whether, while the agreement is conceded to be legal, so far as it makes a trackage arrangement, it is ineffectual insofar as it provides that the respondent shall not accept traffic between Kansas City and Topeka.    Can the one part be sustained and the other part be held void?    Now, it must be admitted, we think, that if this contract were to be sustained and enforced, with the proviso stricken out, it would be a very different contract from that which we now have before us.    It would, moreover, be a contract which we can not think it probable these parties themselves would ever have agreed to make.    The proviso was, beyond doubt, a principal inducement on the part of the Union Pacific for entering into the arrangement, and we can not conceive that its managing authorities would ever have consented to the respondent coming upon its track to be competitor with it for traffic at all local points.    To strike out the proviso by holding it void, would, therefore, be to take from the Union Pacific what probably constituted on its part, a vital consideration and inducement for entering into a contract, which it is assumed must now stand and be enforced without it.    This assumption is grounded on the legal principle that an unlawful provision in a contract otherwise good, may be rejected, and the contract in other respects be sustained.    We do not, however, understand this principle to go so far as to warrant the sustaining of a contract, when that which is illegal in it is the consideration itself; and the contention in this instance must go to that extent, or it will fail to meet the requirements of the case.    The answer to it will then be, that a contract whose consideration is immoral, or otherwise is illegal, and therefore void, is itself void, because it then lacks one of the necessary requisites to any legal validity whatever.

"It must further be conceded that, to enforce the contract according to the views of complainant would be, in effect, to make a new contract for the parties, very essentially different to the one to which they gave assent.    It would not only give to the Union Pacific a competitor upon its own tracks, but it would force the respondent into a competition to which it never gave assent, and which might perhaps be altogether undesirable and unprofitable.    We do not think we have any power to make any such contract for the parties; they must make their own contracts, and when made the contracts must either be valid in the essential provisions, or they must be altogether void.    Courts or other tribunals can not remodel and then enforce them, especially when, if so remodeled, it is obvious the parties themselves would not have made them.

"Either, therefore, this proviso which attempts to preclude the respondent from accepting traffic between Kansas City and Topeka must stand, or the whole contract must be held void. Complainant does not attack the contract as a whole, but conceded that it gives to the respondent rights of trackage, and contends that it not only imposes upon respondent duties and obligations to the full extent contemplated by the parties in making it, but also further duties and obligations, under the laws of the State and of the nation. This view, for the reasons already given, we can not accept. We think we are wholly without power to give to the complainant the relief desired."

We will add, in passing, that the record discloses that the Texas Company was, at the time the contract was made, and is now, the owner of the line of railway from Waxahachie to Dallas over which a trackage right was granted to the Valley Company. By the provisions of the contract it will be recalled that the Texas Company did not relinquish its control to the Valley Company, but specially reserved its right to regulate the management and operation. of the trains of the latter company thereon; nor did it in any respect absolve itself from any duty that it owed to the State or to the public as a common carrier, hence the contract is not open to objection on this ground.

After a full consideration of the question presented, we are inclined to believe that the Commission was without authority to enlarge or add any provisions to the contract under consideration, and as the contract forbade the Valley Company from stopping at said intermediate stations, and since the Valley Company had no rights except such as grew out of the contract, the Commission was therefore without power to make the order in question, requiring the Valley Company to stop at all of said intermediate stations, as it undertook to do. We therefore overrule appellant's first assignment of error.

By another proposition, both of the appellees urge that the order of the Railroad Commission is unreasonable and can not be sustained, because the service on the line of the Texas Company between the cities of Dallas and Waxahachie, and the intermediate stations, is ample and adequate for the accommodation of the freight and passenger traffic thereon, and that there is no public necessity or demand for such additional service as is contemplated or required by the order of the Railroad Commission. The uncontradicted evidence before the court showed that the passenger and freight service on the line of railway at the intermediate stations between Dallas and Waxahachie is not only reasonable and adequate, but is exceptionally good. Section 2 of art. 4580 of the Revised Civil Statutes, as amended by the Act of 1903, p. 183, makes it the duty of the Railway Commissioners to see that upon every railroad and branch of the same carrying passengers for hire in this State, that at least one train a day shall be run thereon, Sundays excepted, upon which passengers shall be carried, declaring that the Commissioners shall have no power to relax this provision. This is the provision relied upon by the State.

We think this law was intended to apply to railways owning and operating their own roads, and that it would be a strained construction of the statute to undertake to apply it in this case to the Valley Company, which had a mere trackage contract over the Texas road.' Especially is this true, it seems to us, where it conclusively appears from the evidence that the service .performed by the Texas Company over its own line between the cities of Dallas and Waxahachie, and the intermediate points, is ample for the accommodation of the public. Appellant must assume, before its argument is- applicable, that the Valley Company, under the law, is regarded as in the same position as if it owned the line of railway between Waxahachie and Dallas, which is not true in fact.

Counsel for appellees contend that the cases cited by counsel for appellant, to wit: Thomas v. Railway Co., 101 U. S., 71; Pennsylvania R. R. Co. v. St. Louis, etc., Ry. Co., 118 U. S., 290; Oregon Ry. & Nav. Co. v. Oregon Railway Co., Ltd., 130 U. S., 1, and Central Transportation Co. v. Pullman Co., 139 U. S., 24, are not applicable and do not sustain his contention, for the reason that the Valley Company did not own said road. We are constrained to hold that since the record shows that the service furnished by the Texas Company was ample and adequate on its line of railway between Dallas and Waxahachie and the intermediate points, that the order of the Commission requiring additional service at the hands of the Valley Company was unreasonable, and hence, for this reason also, can not be sustained.

For the reasons heretofore stated, we are inclined to believe that the judgment of the court below ought to be upheld and the case affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.