## TEXAS & P. RY. CO. v. LOUISIANA PUBLIC SERVICE COMMISSION et al.

(District Court, E. D. Louisiana, New Orleans Division February 8, 1926.)

No. 132.

1. **Railroads ☞80—Authority of Public Service Commission must be clear to justify order requiring railroad to permit use of track by another for local business.**

Authority of state Public Service Commission must be clear and express to justify its order requiring railroad company to permit use of its track for local business by another company, which had contract right to use such track for through business only.

2. **Railroads ☞136—Railroad may contract with another for use of portion of its line on such terms as it may deem proper.**

Though a railroad must be subject to reasonable regulation and control in interest of public, it still enjoys certain rights of private property in its line, equipment, and facilities, which cannot be taken or used by others without its consent, and it may contract with another company for use of portion of its main line on such terms and conditions as it may deem proper, so long as it does not impair its

own power to properly and adequately serve its patrons.

**3. Railroads ⬅➡80—Public Service Commission held not empowered to compel railroad to permit use of track for local business by another having contract for through business only (Const. art. 6).**

Neither statutes of Louisiana nor Const. art. 6, empowers Louisiana Public Service Commission to compel railroad, which by contract permitted another company to use its track for through business, to permit use of track for local business.

**4. Estoppel ⬅➡78(1)—That agreement whereby complainant railroad permitted another company to use its track for local business enabled patrons to build up their business held not to estop complainant from suing to enjoin Public Service Commission from compelling it to continue such arrangement.**

That an agreement whereby complainant railroad permitted another company to use its track for local business enabled patrons on such line to build up their business on strength of having two lines over which to ship their goods *held* not to estop complainant from suing to enjoin state Public Service Commission from enforcing order compelling it to continue such arrangement.

In Equity. Suit by the Texas & Pacific Railway Company against the Louisiana Public Service Commission and others. Decree for complainant.

Thomas J. Freeman and Spencer, Gidiere, Phelps & Dunbar, all of New Orleans, La., for Texas & Pacific Ry. Co.

Denegre, Leovy & Chaffe, of New Orleans, La., for Louisiana R. & S. Co.

Huey P. Long, of Shreveport, La., Bruton T. Dawkins, of Alexandria, La., for Louisiana Public Service Commission.

Before WALKER, Circuit Judge, and DAWKINS and BURNS, District Judges.

DAWKINS, District Judge. This is a proceeding to restrain the Louisiana Public Service Commission from enforcing an order by which Morgan's Louisiana & Texas Railroad & Steamship Company would be compelled to violate the terms of a written contract with complainant, under which the former was given the right to use the track of complainant between the town of Cheneyville, and the city of Alexandria, La., on condition that it would not handle local business between those two points. The order in effect directed the continuance of a previous arrangement by which such business had been handled, and, if not observed, would subject the complainant to the penalties provided by law. A restraining order was issued, and the matter is now to be considered upon the application for a preliminary injunction.

In 1881 the New Orleans Pacific Railway Company, which was later consolidated with the complainant, entered into a contract with the Morgan's Louisiana & Texas Railroad & Steamship Company (hereinafter referred to as the Morgan Company) for a period of 10 years, subject to cancellation upon 12 months' notice by either party, by which it was agreed that the latter, whose road connected with that of the former at Cheneyville, should have the right to use, conjointly with complainant, that portion of its main line between the said points. Under this agreement the Morgan Company was permitted to handle both through and local business into the city of Alexandria just as if its said line had extended to that city. After the expiration of said contract the two roads continued to operate under the same conditions, but without express renewal thereof, until October 1, 1924, at which time a new contract was made, the pertinent provisions of which are as follows:

"Section 2. (a) That, unless and until otherwise agreed between the parties hereto in writing, the use of the joint line by the tenant shall include the operation thereon of the through local and switching trains, engines, and cars of the tenant, and the joint line shall only embrace the use of the right of way, main track or tracks, passing tracks, tracks provided for interchanging cars with steam railroad lines intersecting said joint line, signals, interlocking plants, telegraph and telephone lines, telegraph and telephone stations, including portions of station buildings used as telegraph and telephone stations, water stations and such portions of the connections between the joint line and tracks of the tenant as is provided by its owner, all of which together are hereinafter referred to as the 'joint facilities.' "

"Section 4. That, unless and otherwise agreed between the parties hereto in writing, the tenant shall not handle passengers, mail, express, or freight which shall originate at one terminus of the joint line destined to the other, or which shall originate at or be destined to points between said termini, unless required so to do by duly constituted authority. If required so to do then seventy (70) per cent. of the revenue the owner would have derived therefrom if handled by it shall belong to the owner, and the tenant shall promptly account and pay over monthly to the owner the amount thereof."

The purpose of the new contract was to discontinue the doing of any local business by the Morgan Company over the portion of track in question. Thereafter, on November 4th, the latter company applied to the Louisi-

ana Public Service Commission for authority to revise its tariffs to conform to the said contract. On April 22, 1925, the commission denied the requested authority. On October 30, 1925, the case was reopened by the commission, and after hearing the order complained of was made, which reads as follows:

"Ordered, that the application of the Morgan's Louisiana & Texas Railroad & Steamship Company and of the Texas & Pacific Railway Company to discontinue service of the Morgan's Louisiana & Texas Railroad & Steamship Company between Cheneyville and Alexandria, La., inclusive, be and the same is hereby denied, and the said carriers are both hereby prohibited and forbidden to discontinue any of the service rendered and now being rendered by said Morgan's Louisiana & Texas Railroad and Steamship Company, between Cheneyville and Alexandria, La., inclusive, and the said carriers are both further forbidden and prohibited to do any act against the continuance of said service, or to fail to do any act necessary for proper continuance and conduct of the said service heretofore rendered by the said Morgan's Line aforesaid."

This order of the commission is assailed upon three grounds: (1) That the commission was without power or authority to make the same; (2) that it violates section 2 of article 1 of the Constitution of Louisiana, and the Fourteenth Amendment of the Constitution of the United States, in that it takes the property of complainant without due process of law; and (3) that it impairs the obligations of a contract in contravention of article 4, § 15, of the state Constitution, and article 1, § 10, of the federal organic law.

[1, 2] Pretermitting the constitutional questions raised, in order to justify such an order as the one complained of, we think that the authority of the commission must be clear and express. Notwithstanding the modern tendency to encourage consolidation and unification of the railroad systems of the country, as contrasted with the policy of opposition thereto of a few years ago, we think there remain many cogent reasons why a company, operating its own independent system, should not be compelled to allow the use of its property, especially its main line track, against its will, when not required for proper public service. If it has the courage to build through a given territory, and to expend its money for the purpose of reaching any given point, and thereby builds up a business and traffic upon its line, it would seem that reason and justice alone would give it the right to enjoy such sources of revenue, where it affords a suffi-cient service to the public, without being compelled to share them with others, who have not seen fit or who are unable to make the necessary outlay for building competing lines into the same territory. Although the very nature of the business of a railroad is such that it must be subject to reasonable regulation and control in the interest of the public which it serves, yet it still enjoys certain rights of private property in its line, equipment, and facilities, which cannot be taken or used at the pleasure of others without its consent. To hold that one company cannot contract with another for the use of a portion of its main line upon such terms and conditions as it may deem proper, so long as it does not impair its own power to properly and adequately serve its patrons, is tantamount to saying that it can be compelled to permit a connecting line to use its property upon such terms as the commission may require.

[3] We have looked in vain through the Constitution (article 6) and the statutes of Louisiana for any power in the commission to compel such action, and, if it has no right to issue such an order, then it would seem to follow that the railroad would have the right to decline such a privilege, except upon its own terms and conditions as to the nature of the business to be handled, as well as the division of revenue arising therefrom. If it cannot be compelled to enter into such an agreement, but may be controlled as to the terms thereof after it has been made, then we should think a system which enjoys the advantage of an outlet to ports like the city of New Orleans would hesitate to enter into trackage agreements for the use of its line into such places by others not having those facilities, to the great inconvenience of the public for the protection of which the commission exists. For instance, if the Illinois Central Railroad Company, which permits the Gulf Coast Line to run its trains over the former's track between the cities of Baton Rouge and New Orleans, a distance of approximately 90 miles, were forced to allow this to be done by the Public Service Commission, it might not be willing to enter into such an arrangement.

We find it unnecessary to review the Louisiana law at length, but sufficient to say that there is nothing to sustain the Louisiana Public Service Commission in attempting to enforce such an order as the one complained of in this case. See Whitehurst v. Texas & Pacific R. R. Co., 131 La. 139, 59 So. 42; Texas & Pacific R. R. Co. v. Railroad Commission of Louisiana, 137 La. 1059, 69 So. 837; State ex rel. Milling v. Louisiana Public Service Commission, 154 La. 752, 98 So. 175; State

v. Trinity & Brazos Valley Ry. Co., 56 Tex. Civ. App. 424, 120 S. W. 1123; St. L. & S. F. Ry. Co. v. Mo. Pac. Ry. Co., 156 Ark. 259, 245 S. W. 806; Alford v. Chicago, Rock Island & Pacific Ry. Co., 3 Interst. Com. Com'n R. 519; Union Pacific Ry. Co. v. Chicago, etc. Ry. Co., 163 U. S. 564, 16 S. Ct. 1173, 41 L. Ed. 265.

[4] We have considered the arguments of counsel appearing on behalf of certain patrons upon the line in question (who have not appeared formally in this proceeding) to the point that their businesses have been built up on the strength of having had two lines of railroad over which to ship their goods, but find nothing therein to estop complainant from seeking the relief asked in this case. On the contrary, a continuance of the advantages sought by those interests would, in effect, amount to a discrimination against others on the two lines of railroad at points immediately south of Cheneyville, who enjoy no such privileges.

With respect to the contention of counsel for the Morgan Company that it should not be compelled to abandon the former tariffs in a manner that would result in the charging of higher rates for a short than for a long haul, which would violate the Interstate Commerce Act (Comp. St. § 8563 et seq.) if done without authority from the Interstate Commerce Commission, it is sufficient to say that the granting of the preliminary writ herein would have no such necessary consequences. The only result will be to prevent the Louisiana Public Service Commission from imposing penalties for carrying out the new contract, and we see no reason why the Morgan Company may not still make the proper application to the Interstate Commerce Commission for such authority.

Under the view we have taken, it is unnecessary to consider the constitutional questions.

For the reasons assigned, a preliminary injunction should issue as prayed for.