ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY *v.* MISSOURI

PACIFIC RAILROAD COMPANY.

Opinion delivered December 11, 1922.

PUBLIC SERVICE COMMISSIONS—AUTHORITY OF RAILROAD COMMIS-SION—Under Acts 1921, No. 124, creating the Railroad Commission, investing it with the powers previously exercised by the Corporation Commission and giving it jurisdiction in matters pertaining to the regulation and operation of railroads, and under Crawford & Moses' Dig., § 1642, providing that every railroad company shall permit switch connections for interstate business to be made at its tracks at suitable and safe points by other carriers and shippers upon such terms and conditions as

the Commission shall prescribe, the Railroad Commission has no judicial function, and cannot determine the rights of two railroads under a contract relating to the joint use and maintenance of a wye track, such questions being for the court, though shippers had established warehouses on such track.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

STATEMENT OF FACTS.

These proceedings originated before the Railroad Commission of Arkansas by a complaint filed by the Missouri Pacific Railroad Company against the St. Louis-San Francisco Railway Co.

According to the allegations of the complaint, both the plaintiff and the defendant are engaged in operating a railroad in and through the town of Hoxie, Ark. The Missouri Pacific Railroad Company is the successor of the St. Louis, Iron Mountain & Southern Railway Company, and the St. Louis-San Francisco Railway Company is the successor of the Kansas City, Fort Scott & Memphis Railroad Company. On September 27, 1895, the St. Louis, Iron Mountain & Southern Railway Company and the Kansas City, Fort Scott & Memphis Railway Company entered into an agreement for the use and maintenance of a wye track at Hoxie, Ark. The agreement, among other things, provided:

"It is agreed between the parties hereto that, so long as the party of the first part shall use the wye tracks at Hoxie, Arkansas, the party of the first part shall maintain the south leg of said wye from the headblock on its main line to the heel of the frog at the intersection of said south wye with the main line of the Kansas City, Fort Scott & Memphis Railroad Company, as shown on accompanying blue-print, which is made a part of this agreement; and that, so long as the party of the first part shall maintain the south leg of the said wye as aforesaid, it shall be entitled to use both legs of the wye, as well as necessary tracks to enable it to transport engines and cars from the south to the north leg of the wye, or *vice versa.*"

Since that agreement was made the Plunkett-Jarrell Grocery Co., a wholesale dealer in groceries, and Goodwin & Jean, wholesale dealers in the poultry business, have located their warehouses on said wye track. Other industries have also been located on said wye track.

In September, 1920, appellant, who was the defendant before the Railroad Commission, gave notice to appellee, the complainant before that body, of its intention to terminate the aforesaid agreement, and to prevent appellee from using said wye track, unless it paid to appellants such reasonable toll as might be agreed upon.

The complaint further alleges that under § 5 of act No. 124, approved February 15, 1921, the Arkansas Railroad Commission is given jurisdiction over all matters relating to the regulation and operation of railroads.

The prayer of the complaint is that appellant be required to answer the charges made, and that, after due hearing, an order be made commanding appellee to permit the existing arrangements with reference to the joint use of the wye track at Hoxie to continue in effect.

Appellant filed an answer, denying all the material allegations of the complaint. The Plunkett-Jarrell Grocery Co. was allowed to file an intervention in the proceedings. A great volume of testimony was taken before the Arkansas Railroad Commission, which we do not deem it necessary to set out, to decide the issue between the parties to these proceedings. We deem it only necessary to state that the allegations contained in the complaint were proved, and much testimony was introduced tending to show that it would be to the advantage of the shippers to have the continued use of the wye track by both railroads in the future, as had been done in the past. Most of the switching on the wye was done by appellee, because it kept and maintained a switch engine at Hoxie. All the switching that was done by appellant was done by the engines of its local freight trains. The shippers were not interested in the toll that should be paid by one

carrier to the other for the use of the wye track, but they were interested in having both railroads use the same in order that their facilities for receiving and delivering freight might be better. In other words, the shippers deemed it to be to their advantage for both railroads to continue to operate the wye as they had done, instead of leaving its operation to the appellant in the future.

The Arkansas Railroad Commission, after hearing the evidence, made the following order:

"This is an application on the part of the Missouri Pacific Railroad Co. praying this Commission to make an order requiring the defendant, St. Louis-San Francisco Railway Co., to continue the joint switching privileges over and upon its wye tracks in the town of Hoxie, Arkansas, under which for more than 25 years the complainant has had privilege of operating its locomotives and cars for the delivery and receiving of freight to and from the public in Hoxie, the said privilege having been accorded by the predecessors in title and right of the St. Louis-San Francisco Railway Co., and having been continued by the St. Louis-San Francisco Railway Co. since it became the operator of this line of railroad and of the yards at Hoxie. That, under this privilege heretofore granted and used for a long period of time, the complainant, together with the St. Louis-San Francisco Railway Company, became the joint owner of the freight depot and the stock pens located upon the property of the defendant in the town of Hoxie and approached by trains only over the wye tracks of the defendant.

"The defendant on the 19th day of September, 1921, served notice on complainant that, on and after the 12th day of November, 1921, the privilege of using the tracks of the defendant as aforesaid would be withdrawn and denied to the complainant.

"Plunkett-Jarrell Grocer Co. files its intervention in this case, praying this Commission to make an order requiring the defendant to allow and permit the joint use

of its tracks in the yards of Hoxie, Arkansas, as the same has heretofore existed for a long period of time, by complainant. After hearing the evidence introduced by the parties in this case, the Commission is of the opinion and finds that, to allow the defendant to discontinue the privilege heretofore accorded to the complainant would greatly inconvenience and discriminate against the shippers and public in this community served by complainant and defendant.

"It is therefore by the Commission ordered that the defendant, St. Louis-San Francisco Railway Co., be, and it is, ordered to permit and to continue the joint use of its tracks and yards at the town of Hoxie, Arkansas, by the complainant, Missouri Pacific Railroad Co., as the same has for a long period of time existed and been practiced by both complainant and defendant, until the further order of this Commission, or some court having jurisdiction of the parties and the subject-matter of this action."

Appellant duly prosecuted an appeal to the Pulaski Circuit Court, and that court confirmed the order of the Arkansas Railroad Commission upon the evidence and pleadings before said Commission. Thereupon appellant duly prosecuted an appeal to this court.

*Moore, Smith, Moore & Trieber,* for appellant.

In making the order the Arkansas Railroad Commission must have been seeking either to enforce specifically what it regarded as contract rights between the two railroad companies, or to act under its powers of regulation of railroads independently of the contract. In neither event did the Commission have power to make the order. It has no judgment power to enforce contracts. Const. 1874, sec. 1, art. VII; 160 Pac. (Cal.) 830; *Jones* v. *Cooper,* 154 Ark. 308; 96 Atl. 1013; 192 S. W. (Mo.) 460; 226 S. W. (Ky.) 113. It has no regulatory power to make the order. The act of Congress of 1920, known as the "Transportation Act," supersedes all power of the State over this subject. 233 U.

S. 681; 222 U. S. 424; 222 U. S. 378; 236 U. S. 439; 211
U. S. 612; 87 So. (Fla.) 778. The Commission had no
such power under the act creating it. 94 N. E. 212-215; 47
So. (Fla.) 969; 91 Atl. 768; 19 Pac. 703. The order
would deprive appellant of its property without com-
pensation, and is void under U. S. Const., § 1, art. 14,
and Ark. Const. §§ 21 and 22, art. 2; 195 U. S. 540; 212
U. S. 132; 217 U. S. 196; 62 S. E. (Va.) 369. Lewis on
Eminent Domain, 3rd ed., § 423.

*Samp Jennings* and *Thos. B. Pryor,* for appellee.

It was not necessary for the Commission to exert
judicial power to order the existing arrangements to
continue until the matters in controversy could be set-
tled in court. Property rights are not necessarily in-
volved. It is a question of service to the community.
The Commission was not bound by the petition, but had
power to make such orders as the facts might require in
order to enforce proper service. *Jones* v. *Cooper* is not
in point. The Commission had power to make this order.
*Thomas-Bowman Cooperage Co.* v. *Ry. Co.,* 151 Ark.
589; also 104 Ark. 474; 95 Ark. 455; 99 Ark. 1. The
Transportation Act does not apply to the facts here.
*Ridge Coal Mine Co.* v. *Rd. Co.,* I. C. C. Dec. June 17,
1921; 85 Ark. 284; 22 R. C. L. 793; 179 U. S. 287; 230
U. S. 352; 211 U. S. 612; 234 U. S. 412; 234 U. S. 280;
242 U. S. 255. There was no attempt by the commis-
sion to adjudge the title to the property. The order
preserved the rights of the parties *in statu quo* until
determination of the controversy in a court of competent
jurisdiction.

*Moore, Smith, Moore & Trieber,* in reply; *W. F.
Evans* and *E. T. Miller,* of counsel.

The only tribunal possessing the power to make
temporary orders for preserving rights *in statu quo* is
a court of equity. The Transportation Act supersedes
the act creating the Arkansas Railroad Commission.
The cases cited by appellee were decided prior to the
passage of act and throw no light on the question.

HART, J. (after stating the facts). The Legislature of 1921 abolished the Arkansas Corporation Commission and created the Arkansas Railroad Commission. General Acts of Arkansas 1921, p. 177.

Under § 2 of the act the Commission possesses all the powers and duties provided in the act and all such other powers as were possessed and exercised by the Railroad Commission of Arkansas of April 1, 1919, and especially those set forth in secs. 1622-1652, inclusive, of Crawford & Moses' Digest, and in addition thereto such other powers as were possessed by the Arkansas Corporation Commission.

Sec. 5 gives the Commission jurisdiction in all matters pertaining to the regulation and operation of railroads.

Sec. 1642 of Crawford & Moses' Digest provides that every railroad company shall permit switch connections for intrastate business to be made with its tracks at suitable and safe points by other carriers or shippers, upon such terms and conditions as the Commission may prescribe, etc.

This brings us to a consideration of whether or not the pleadings and evidence make a case relating to the regulation of railroads or pertaining to switch connections by them, under the sections of the Digest just referred to.

It is conceded that the Arkansas Railroad Commission is an administrative body, and that it cannot exercise judicial powers. It is also conceded that its function, like that of the Interstate Commerce Commission, is to regulate public utilities and to compel the enforcement of their duties to the public. *Southern Pacific Co.* v. *Interstate Commerce Commission,* 219 U. S. 433; *Thomas Bowman Cooperage Co.* v. *Mo. & N. Ark. Rd. Co.,* 151 Ark. 589, and *Jones* v. *Cooper,* 154 Ark. 308. Hence the Arkansas Railroad Commission could not compel the railroads in this case to carry out their contract obligations to each other, if such was the effect of its order,

The Commission has no power to determine the rights of the parties hereto, under their contract, or to determine whether either of the railroads had a valid claim against the other under it. These are questions for the courts, and not for the Railroad Commission.

In the application of this well-settled rule to the facts as they appear from the record, we are of the opinion that the case presented is one calling for the construction of the contract between the two railroads and the enforcement of their rights thereunder, and not one calling for the regulatory power of the Commission as to switch connections between the two railroads, or enforcing their rights and duties to the public. This will be gathered from the pleadings filed, the evidence introduced, and the order of the Railroad Commission itself.

The complaint specifically sets out that part of the agreement between the railroad companies for their use of the wye track at Hoxie, Ark. It also alleges that the two railroads have used the wye track since the agreement in question under its provisions. The prayer of the complaint is that appellee be permitted the joint use of the track at Hoxie under the existing agreement. Much of the testimony of appellee is directed to the fact that the two railroads jointly used the track under the provisions of the contract set out in the complaint until the present controversy arose. The Railroad Commission made a specific finding to that effect. It ordered appellant to permit and to continue the joint use of its tracks and yards at the town of Hoxie by appellee, as the same had for a long period of time existed and in practice by both parties, until the further order of the Commission or some court having jurisdiction in the premises.

The order shows on its face that it was an attempt by the Railroad Commission to determine the rights of the parties under the contract and to enforce the same by an order in the nature of an injunction. This the Railroad Commission had no power to do, and the circuit

court erred in not holding its order void and of no effect. The parties to this controversy must submit their rights under the contract to the courts for construction and for the enforcement of the rights of the parties under it. The court having jurisdiction of the matter can, by appropriate orders, preserve the rights of the parties *in statu quo* until the case is finally disposed of.

The fact that shippers have established their warehouses on the wye track adds nothing to the strength of the position assumed by the appellee. This fact cannot give it any additional rights under the contract. The rights of parties to a contract cannot be determined by the convenience or inconvenience which may result to them or to the public from the enforcement of such contract.

We do not decide or express any opinion about the power of the Arkansas Railroad Commission to provide for switch connections for intrastate business at Hoxie, Ark., between the two railroads, independent of and disconnected with the contract in question.

For the error indicated, the judgment of the circuit court will be reversed and the cause remanded, with directions to the circuit court to quash the order of the Arkansas Railroad Commission, and for further proceedings according to law.