## St. Louis-San Francisco Railway Company v. Missouri Pacific Railroad Company.

## Opinion delivered April 16, 1928.

1. CONTRACTS—EFFECT OF BREACH.—The general rule that a party to a continuing contract of mutual and dependent covenants cannot require the other party to perform executory stipulations while he fails to perform a contract on his part, *held* subject to exceptions growing out of the nature of the thing done and conduct of the parties.

2. RAILROADS—JOINT USE OF Y TRACK—ENFORCEMENT.—In a suit by a railroad to enjoin another railroad from interfering with an agreement providing that plaintiff should be entitled to use a certain Y track as long as it maintained the south leg of the Y, evidence of the defendant's conduct showing an intention to refuse to allow plaintiff to maintain such south leg of the Y, precluded defendant from complaining of plaintiff's failure to comply with the contract, and warranted the court in finding that plaintiff was not guilty of such failure to perform as would release defendant from compliance.

Appeal from Lawrence Chancery Court, Eastern District; *A. S. Irby,* Chancellor; affirmed.

STATEMENT OF FACTS.

The Missouri Pacific Railroad Company, successor to the St. Louis, Iron Mountain & Southern Railway Company, brought this suit in equity against the St. Louis-San Francisco Railway Company, successor to the Kansas City, Fort Scott & Memphis Railroad Company, to enjoin the defendant from interfering with the existing arrangement at Hoxie, Arkansas, with reference to the use of the wye tracks under a contract dated September

27, 1895, between the St. Louis, Iron Mountain & Southern Railroad Company, party of the first part, and the Kansas City, Fort Scott & Memphis Railroad Company, party of the second part.

The contract recites that a controversy had arisen between the parties as to the ownership and use of the tracks of the two railroad companies at Hoxie, Arkansas. That part of the contract relating to the controversy in the present suit reads as follows:

"It is agreed between the parties hereto that, so long as the party of the first part shall use the Y tracks at Hoxie, Arkansas, the party of the first part shall maintain the south leg of said wye from the headblock on its main line to the heel of the frog at the intersection of said south Y with the main line of the Kansas City, Fort Scott & Memphis Railroad Company, as shown on accompanying blue-print, which is made a part of this agreement; and that, so long as the party of the first part shall maintain the south leg of the said wye as aforesaid, it shall be entitled to use both legs of the Y as well as necessary tracks to enable it to transport engines and cars from the south to the north leg of the Y, or *vice versa.* It is also agreed that the party of the second part, during the continuance thereof, may use, as it has heretofore, so much of the tracks of the party of the first part as it may need in moving engines and cars between the west ends of the legs of said Y. The use of the tracks of one party by the other shall be subject to the control and directions, as to time and manner of use, of the owner of the tracks; and the use by either party of the other's main track shall be made under order of the owner's train dispatcher."

On January 29, 1906, the St. Louis-San Francisco Railway Company, which had succeeded to the rights and property of the party of the second part in the contract dated September 27, 1895, entered into a contract with the St. Louis, Iron Mountain & Southern Railway Company relating to the construction and joint use of a passenger station where the lines of said railroads crossed

at Hoxie, Arkansas. On October 7, 1912, the St. Louis-San Francisco Railway Company entered into another contract with the St. Louis, Iron Mountain & Southern Railway Company for the construction and joint use of a freight station at said point to replace the old one, which had been destroyed by fire.

W. E. Brooks was the superintendent of the Missouri Pacific Railroad Company, which had succeeded to the property and rights of the St. Louis, Iron Mountain & Southern Railway Company under said contract, from June 1, 1917, to January 10, 1919. During this time no question was made about the right of appellee to use the wye tracks above referred to for all purposes.

A. A. Miller was division engineer of appellee, and, during his time as said division engineer, had charge of the tracks at Hoxie, Arkansas. Appellee maintained the tracks there, including the south track of the wye, from June, 1912, until June, 1917. From this time until in February, 1920, the United States Government maintained the tracks at Hoxie, Arkansas, during the period of our part in the World War.

According to the testimony of W. W. Wamsganz, he had been connected with the auditing department of appellee since April, 1909, and was familiar with bills presented by appellant with reference to maintenance charges for the wye tracks at Hoxie. Appellant presented bills for one dollar a car for switching charge over the wye as far back as April, 1915, and also during 1916. These bills were returned by appellee to appellant, because it did not think they were proper charges under the contract of September 27, 1895.

Other evidence for appellee tended to show that it was necessary for appellee to use the north leg of the wye to reach the joint freight depot, and it was necessary to use the south leg of the wye to reach the joint stock pens.

The Missouri Pacific Railroad Company owns the ends of the leg of the wye located on its right-of-way, and the St. Louis-San Francisco Railway Company owns

all the rest of the wye. The contract under consideration recites that 19 9/10 feet of track of the wye on the south leg is situated on the right-of-way of appellee, and 161 2/10 feet of track of the north leg of the wye is on the right-of-way of appellee. In other words, the record shows that appellee owns the end of both legs of the wye located on its right-of-way and appellant owns all the rest of the wye.

According to the testimony of witnesses for appellant, it acquired its rights under the contract about November 1, 1916, and the controversy about the wye tracks had started prior to that time, and has continued ever since. The freight station at Hoxie belongs to appellant, and it has permitted appellee to use the north leg of the wye to serve the freight-house. The passenger depot is partly on the property of appellant and partly on the property of appellee, and is owned jointly by the railroad companies. The stock pens are also owned jointly, but the freight station is owned by appellant.

Appellant served notice on appellee that, after the 12th day of November, 1921, it would not be permitted to use or run its engines and cars upon the tracks constituting the wye at Hoxie, Lawrence County, Arkansas. It is the contention of appellant that appellee should pay for cars that are moved over the north leg of the wye track to the joint freight depot, and it has used constant efforts to induce appellee to enter into a contract for continuance of the use of said wye tracks. Since the government has relinquished control of the railroads, the wye tracks at Hoxie have been maintained by appellant. During the course of the controversy, appellee has written to appellant that it would reimburse it for any amount expended by it in maintaining the south leg of the wye.

Other facts will be stated or referred to in the opinion.

The court found the issues in favor of appellee, and it was decreed that appellant be enjoined from interfering in any manner with the use of said wye tracks by appellee under the contract of September 27, 1895. To

reverse that decree the appellant has duly prosecuted
this appeal.

*E. T. Miller, E. L. Westbrooke, Jr.* and *E. L. West-brooke,* for appellant.

*Edward J. White, Harry L. Ponder* and *Thos. B. Pryor,* for appellee.

HART, C. J., (after stating the facts). At the outset
it may be stated that appellee first instituted proceed-
ings against appellant before the Railroad Commission
of Arkansas for an order requiring appellant to permit
appellee to continue the joint use of the wye tracks at
Hoxie, Arkansas, under the agreement of September 27,
1895. Upon a record which contains practically the same
facts as the present one, the Arkansas Railroad Commis-
sion ordered appellant to permit appellee to continue the
joint use of its wye tracks at Hoxie, Arkansas. Appel-
lant prosecuted an appeal to the Pulaski Circuit Court,
and that court confirmed the order of the Arkansas Rail-
road Commission, upon the evidence and pleadings before
said commission. Upon the appeal to this court, it was
held that the action of the Railroad Commission amounted
to the exercise of judicial functions, and that it had no
such power. Hence it was held that it could not determine
the rights of the two railroads under the contract of Sep-
tember 27, 1895, relating to the joint use and maintenance
of the wye tracks at Hoxie, Arkansas. It was pointed out
that the parties must enforce their rights under the con-
tract in the courts, and that the court having proper juris-
diction of the matter could, by appropriate orders, pre-
serve the rights of the parties until the case was finally
disposed of. Hence the judgment of the circuit court
was reversed, and the cause was remanded with direc-
tions to it to quash the order of the Railroad Commis-
sion. *St. Louis-San Francisco Ry. Co.* v. *Missouri Pacific
Rd. Co.,* 156 Ark. 259, 245 S. W. 806.

The circuit court obeyed the mandate of this court,
and subsequently suit was commenced against appellant
by appellee to compel the enforcement of its rights under
the contract of September 27, 1895, and the prayer of

the complaint is that appellant should be enjoined from interfering with the agreement existing at the time between the parties to this suit with reference to the wye tracks at Hoxie, Arkansas.

Counsel for appellant seek to reverse the decree under the general rule that one party to a continuing contract of mutual and dependent covenants cannot require the other to perform executory stipulations while he fails or refuses to perform the contract on his part. *Phillips & Colby Construction Co.* v. *Seymour,* 91 U. S. 646, 23 L. ed. 341. Hence it is contended by counsel for appellant that the failure of appellee to maintain and keep in repair the south leg of the wye under the contract of September 27, 1895, releases appellant from compliance with the contract.

There are exceptions to this general rule, growing out of the nature of the thing to be done and the conduct of the parties. Under the terms of the contract of September 27, 1895, it was provided that, so long as the party of the first part, which was at that time the owner of the railroad now operated by appellee, shall maintain the south leg of the said wye, it shall be entitled to use both legs of the wye as well as the necessary tracks to enable it to transport engines and cars from the south to the north leg of the wye, or *vice versa.* The chancellor was justified in finding that appellee and its predecessor in title complied with this requirement of the contract until the first part of June, 1917. On this point a division engineer testified in positive terms that appellee and its predecessor in title had maintained the wye tracks under the contract from June, 1912, until June, 1917, and we do not think there is any satisfactory contradiction of his testimony. J. H. Quay, a section foreman of appellant, testified that he had maintained the south leg of the wye for appellant during the years 1918 to 1920 and up to the time he was testifying. He said that he did this under instructions given him by his roadmaster. We think, however, the witness was mistaken on

this point. No doubt he did the work under instructions from his roadmaster, but he was not doing it for appellant but for the United States Government until the 28th day of February, 1920. The division engineer testified positively that, during the period of government control, the United States maintained the wye tracks. Thus it will be seen that it cannot be claimed by appellant that appellee failed to maintain the south leg of the wye until at least after the 28th day of February, 1920.

The record shows that, before this time, appellant was demanding additional compensation from appellee for the use of the wye under the contract of September 27, 1895, and appellee was at all times denying the right of appellant in this respect. The record also shows that the managers of the respective roads recognized, in April, 1918, that there was no chance of an agreement as to the construction to be placed upon the contract under consideration. It is true this was during the period of government control, but the same persons were retained as managers of the road during this period. In September, 1920, appellant gave notice to appellee of its intention to terminate said agreement. The matter has been continually in process of litigation of some kind during these years. Appellee contended for its rights under the contract during all this time and wrote to appellant that it would pay the cost of maintaining the south leg of the wye. It will be remembered that, according to appellant's own evidence, it had taken charge of the tracks during the year of 1918 and ever since had maintained them. This action, together with the attendant circumstances, showed a tendency on its part to refuse to allow appellee to maintain the wye during these years, and it cannot now complain that appellee has failed to comply with the terms of the contract because the failure was caused by the refusal of appellant to allow appellee to repair and maintain the south leg of the wye. Its conduct in doing so, coupled with its repeated demands

during these years to appellee for an additional contract, warranted the court in finding that appellee was not guilty of such failure to perform the contract on its part as would release appellant from compliance with it.

The decree will therefore be affirmed.