ABEL OF ARK. *v.* RICHARDS.

5-2945                                    365 S. W. 2d 705

Opinion delivered March 18, 1963.

*Milham & Cummins,* for appellant.

*Ben M. McCray,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Abel of Arkansas, Inc., is an Arkansas corporation engaged in the business of processing sand and gravel into aggregate for construction use, and its plant is located on the Saline River near Benton. Appellee, Mike Richards, is a

resident of Benton engaged in contracting, and hauling gravel and other products. On August 27, 1960, appellant and appellee entered into a written contract, whereby the company agreed to pay Richards "the sum of 55 cents per cubic yard of raw gravel and aggregate taken from the Airport lands and removed and placed on the grounds in the plant of Abel;" appellant also agreed to pay to Richards an additional sum of 10 cents per cubic yard for an easement across Richards' lands.[1] Richards agreed to "put at least 500 cubic yards of aggregate in the plant per day," except Sundays, and unless prevented by high water. Abel agreed to pay Richards for the gravel at the time of sale, or collection, but not later than 60 days after the sale. The contract was to run for one year.

On February 1, 1962, appellant instituted its complaint against Richards alleging that the latter had breached the contract by failing to deliver the 500 cubic yards per day, and that the company had been damaged in the sum of $42,753.50. Judgment was sought in that amount. Following the filing of a demurrer by appellee, a substituted complaint was filed by appellant, seeking identical relief, but specifically setting up the manner in which the figure of $42,753.50[2] had been reached. Richards answered with a general denial, and filed his cross complaint against appellant seeking judgment in the sum of $5,825.45. It was alleged that no payments had been made to appellee since February 28, 1961, though appellant had sold a substantial amount of gravel since that time. Judgment was sought for alleged amounts due because of such sales, and the balance of appellee's claim was predicated upon alleged rent due from the company for the use of certain equipment belonging to Richards, and for alleged conversion of, and damage to, other equipment owned by appellee. After the filing of other pleadings and interrogatories, the cause proceeded to

[1] The object was to install a washing plant, for the purpose of stockpiling sand, gravel, and other aggregate at Abel's plant.

[2] According to the pleadings, "The $42,753.50 sued for herein is the amount or difference between what plaintiff was to pay defendant, plus the expense of processing the materials into finished products under the contract and the market value of the number of yards which defendant failed to deliver to plaintiff's plant under said contract."

trial, and the jury returned a verdict for Richards on his cross complaint in the sum of $6,712.00. The amount was reduced by the court to $5,825.45, inasmuch as Richards had only sought that sum in the cross complaint. From the judgment entered by the court in the last amount, appellant brings this appeal. Several points are urged for reversal which we proceed to discuss.

It is first asserted that the court erred in permitting counsel for appellee to cross-examine J. P. Brumbelow, Secretary and Treasurer of appellant company, relative to certain matters that had not been included in the interrogation on direct examination, and which (according to appellant) related only to the cross complaint filed by appellee. In the first place, the examination appears mainly to enlarge upon questions which were touched upon in the direct examination, and in the next place, though the general rule is that cross-examination must be confined to only those facts and circumstances connected with the matters actually stated by the witness during direct examination, we have also recognized the discretionary power of the trial court to allow variations from the customary order. Ordinarily we decline to consider as error any variation sanctioned by the trial court unless there is an abuse of discretion. *St. Louis, I. M. & S. Ry. Co.* v. *Raines,* 90 Ark. 398, 119 S. W. 665; *Hightower* v. *Sholes,* 128 Ark. 88, 193 S. W. 257. See also article entitled "Cross Examination and Impeachment" by Jerome K. Heilbron, attorney of Fort Smith, at Page 41, Volume 15, Arkansas Law Review. We find no abuse of discretion in the present instance, particularly inasmuch as the subject matter was covered by later witnesses.

In making his opening statement to the jury, counsel for appellee remarked that the litigants "threw this contract out the window and made an oral contract." Appellant objected to the statement on the ground that no oral agreement had been pleaded. The objection was overruled. It is true that the answer and cross complaint do not assert any agreement made subsequent to the original contract, but we are unable to see that any prejudice resulted to appellant from the statement made by counsel in his opening remarks. After all, this was merely a

statement — not evidence. A more proper moment for this objection to have been made was at the time the proof of a new agreement was offered. Richards offered this proof during his testimony—and no objection of any nature was made by appellant.

It is asserted that the judgment is contrary to the evidence, but the duty of passing upon the evidence was a proper prerogative of the jury, and not this court. The testimony was quite conflicting, constituting what is sometimes referred to as a "swearing match" between the litigants and their respective witnesses, and presented the questions of whether the parties proceeded entirely under the original agreement or under a subsequent agreement, which party first violated the contract under which they were operating, or whether, possibly, both abandoned any agreement that had been made. The company contended that Richards did not deliver the gravel in the quantities, nor manner, called for by the contract, and evidence was offered in support of that contention, and to explain the amount of damages sought ($42,753.50) in the complaint. From the testimony of Brumbelow:

"The total number of days should have been 365, but we started with October 26th, which is 295—I beg your pardon—294 days, and we—and I counted them by the calendar—it was 42 Sundays taken from that 294 which would leave 252 days. Of course, the contract had a high water clause, it would necessarily have a bad weather clause, and the added high water clause by most stated contracts will give a twenty-five percent leverage for high water on their contract, which we gave to him in determining the number of days of operation. So we took twenty-five percent off the 252 which would have been 63 days that we were allowing him for high water, would have been a total of 189 operating days at the plant. Now, 189 days times five hundred yards per day would have been 94,500 yards of material that should have been put to the plant in the 189 days of operation. Now, he actually put to the plant in those days a total of 8,993 yards. That figure I gave you while ago was correct. He actually put 8,993 yards to the plant, which, incidentally was only

sixteen days of operation for the plant out of that particular year forfeiting the contract, which would leave the amount under the contract of 85,507 yards, and that times fifty cents would be $42,753.50."

Several other witnesses testified that Richards never did deliver as much as 500 cubic yards in any one day, and gravel was not delivered in sufficient amounts to permit full operation of the plant.

Appellee disputed these statements, testifying that he started hauling gravel as soon as the plant was ready for operation (some time in October). Richards stated,

"They had some gravel on the ground in the stockpile at all times, except one time when Mr. Ament asked me to shut off hauling for one week. There was so much stuff there, we had him covered up on the ground, so he could not get around with his loader, and it was one week there that we did not haul any gravel for him at his request. * * * Well, we would back up there with a load of gravel and nine times out of ten we would have to sit there and wait anywhere from ten minutes to an hour, and then when we did get a chance to dump it out we would have to raise the bed at least three times, because it would run over on the belt and it would shut down, and we would sit there. Every load we put in it was like that. They would ask us to do that because the conveyor belt would break. And on several occasions they would have to stop hauling and clean that hopper out with a shovel." Other witnesses also testified substantially to the same facts.[3] Appellee testified that he finally quit hauling because "they went broke and didn't have any money to operate on."

Certainly, there was evidence under which the jury could find that a supplemental agreement was entered into. The testimony reflects that it became necessary to enter into a further contract relative to obtaining gravel to supplement the amount of gravel being hauled from

---

[3] Testimony was also offered by appellant that Richards entered into a federal contract and moved to Sheridan to service a gravel haul from Sheridan to Redfield; appellee offered testimony that appellant company entered into a contract with the Burks Company to haul gravel to the premises without his (Richards') knowledge.

the river.[4] An agreement was entered into to pay Richards $1.05 per yard for gravel hauled from another location. While Brumbelow testified "that was all Mike's idea," the company did accept the gravel, and paid Richards for part of it. Admittedly, appellant still owes Richards $618.40.

Appellant complains that Richards should not have been permitted to present the proof just mentioned, since his pleadings did not assert this agreement; however, as heretofore pointed out, this evidence was offered without objection. In *Fairbanks-Morse & Company* v. *Hogan*, 201 Ark. 1114, 148 S. W. 2d 162, we said:

"Where the plaintiff acquiesced in the method of examining witnesses and did not contend trend of the testimony thus adduced was outside the scope of the pleadings, the answer will be treated as having been amended to conform."

See also *R.C.A. Victor Co., Inc.* v. *Daugherty*, 191 Ark. 401, 86, S. W. 2d 559.

There was likewise testimony under which the jury could have found that appellant company was not in sufficient operating condition to use 500 cubic yards of aggregate each day. While this was stoutly denied by witnesses for appellant, the question was, as heretofore stated, entirely one for the jury to determine. Appellant frequently reiterates in its brief that appellee did not start hauling gravel until October, whereas Richards was supposed to start hauling in the latter part of August. Appellee's answer to this contention was simply that the plant was not, at that time, operating in a manner that would enable it to handle the loads called for in the original agreement. In addition, it will also be noted from the testimony of Brumbelow (heretofore quoted) that the company, in figuring up the amount of damages in the complaint, *used the commencement date of October 26*. In other words, it would appear that, in effect, appel-

---

[4] This was occasioned by the condition of the gravel hauled from the river. "It had so much polution of dirt and shale that they stopped me. It looked like a lot of gravel but when you reached down and picked it up there was this old black mud in it and it wasn't altogether in the strippings either."

lant abandoned the contention that appellee first violated the contract by not starting in August, and waived appellee's failure to do so, for in seeking damages, it relied on events that occurred subsequent to the 26th day of October.

Appellant also complains that the evidence (upon which the verdict for appellee was based) does not constitute substantial evidence. This objection primarily refers to various items mentioned by Richards in his testimony, which related to damage to his equipment. For instance, Richards testified that the company used a loader belonging to him and damaged it to the extent that he had to "tear it down and completely overhaul it" at a cost of $2,300. Appellee testified that he was not present at the time this was done and had acquired the information from his operator. Appellant says this evidence was inadmissible because it was hearsay evidence. Of course, it is hearsay evidence, but an examination of the record reflects that no objection was made at the time this testimony was given. In *New Empire Ins. Co.* v. *Taylor*, 235 Ark. 758 (Law Reporter of Nov. 26, 1962), 362 S. W. 2d 4, this court, quoting McCormick on Evidence, said:

"A failure to make a sufficient objection to evidence which is incompetent waives as we have seen any ground of complaint of the admission of the evidence. But it has another effect, equally important. If the evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of whatever rational persuasive power it may have. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. Such incompetent evidence, unobjected to, may be relied on in argument, and alone or in part may support a verdict or finding. This principle is almost universally accepted and it applies to any ground of incompetency under the exclusionary rules."

Appellant also asserts that the cost of repair was not the proper method to prove damage to secondhand equipment, but, as stated, no objection was made when the testimony was introduced. This same holding likewise

applies to various other items of damage offered by Richards that are now questioned by appellant, but to which no objection was made at the time of the introduction.

Appellant contends that inasmuch as the jury returned a verdict in an amount greater than that sought by appellee in his cross complaint, the court erred in not setting the verdict aside rather than reducing the judgment in the amount of $876.55. No motion to set aside the judgment was made, but at any rate, we cannot see how appellant was prejudiced by the court's action; the reduction inured to the benefit of the company, and, in fact, a failure to have reduced the judgment to the amount sued for, would have constituted error. *Cohn* v. *Hoffman,* 45 Ark. 376; *Turner* v. *Smith,* 217 Ark. 441, 231 S. W. 2d **110.**

Appellant asserts that the court erred in failing to instruct the jury on behalf of the plaintiff (appellant) as orally requested by plaintiff's attorney, and that the court's Instruction No. 1 failed to apprise the jury of the company's rights. The objections which were made to this particular instruction are not well grounded, and appellant did not offer any instructions in its own behalf.

Appellant complains about certain instructions that were given to the jury by the court at the request of appellee. Appellee's Instruction No. 2, which dealt with the burden of proof on the part of the plaintiff, is challenged by appellant, but we find no error in the instruction. Complaint is made of appellee's Instructions No. 4 and No. 6, which are similar to each other. No. 4 reads as follows:

"You are instructed that the failure of one party to a contract to comply with its terms releases the other party from complying with it, so if you find from the evidence in this case that the plaintiff, Abel of Arkansas, did not comply with the terms of the contract sued on herein, then there was no further obligation on the part of the defendant, Mike Richards, to comply with the terms of said contract."

An objection was made to this instruction on the basis that there was no evidence upon which to base it, and it was therefore abstract and "it is admitted by the defendant in his evidence that he did not deliver any aggregate to the plant until October 28." We have already in our prior discussion answered the quoted statement, and, as previously pointed out, there was evidence that Abel had not complied with the contract, so the objection is not well taken. Appellee's Instruction No. 6 reads as follows:

"You are instructed that one breaking a contract cannot recover on said contract, so if you find from the evidence in this case that the plaintiff, Abel of Arkansas, first breached the contract sued on herein, then your verdict should be for the defendant, Mike Richards, on the complaint of the plaintiff."

Objection was made that this instruction "is not a correct declaration of the law." Of course, this objection is no more than a general objection, which is only good if an instruction is inherently erroneous, i.e., the instruction could not be correct under any circumstances. A general objection was not sufficient to challenge this instruction, and appellant failed to point out specific errors.[5]

---

[5] While there are several cases that seem to support these instructions (*Mo. Pac. Railway Co.* v. *Yarnell*, 65 Ark. 320, 46 S. W. 943, *Nakdimen* v. *Baker*, 111 F. 2d 778, and some others), the statement that the one who first breaches a contract cannot recover on the contract, is generally qualified by other language. In *St. Louis - S. F. Ry. Co.* v. *Mo. Pac. Rd. Co.*, 176 Ark. 1016, 5 S. W. 2d 364, this court pointed out, "There are exceptions to this general rule, growing out of the nature of the thing to be done and the conduct of the parties." In *Griffin* v. *Chesney*, 168 Ark. 240, 269 S. W. 582, we said, "There is more uncertainty about who committed the first breach, and this appears to be the principal question of fact in the case. Cases are cited holding that the party who commits the first *substantial* (our emphasis) breach of a contract cannot maintain an action against the other contracting party for a subsequent failure to perform. This is, of course, a well settled principle of the law." A pertinent discussion is found in Corbin on Contracts, Volume 6, Chapter 68, Sections 1253 and 1254. Without necessarily indicating our full approval or acceptance of the language therein used, we quote portions of those sections as interesting observations on the subject. From Section 1253 (Page 7): "It is not always that a breach of contractual duty by one party to a bilateral contract discharges the duty of performance on the part of the other. As the term "breach" is used, a contractor who has committed a breach is guilty of a wrong for which some remedy is available, the remedy varying with the case. Being guilty of a wrong does not make him an outlaw or deprive him of all rights, even the rights that were created by the very contract that he breaks. This is true, in spite of many a contrary

Appellant asserts some other alleged errors, but these are either not argued in the brief, or are found to be without merit.

No reversible error appearing, the judgment is affirmed.

dictum, even when his breach is 'wilful.' Indeed, it seems best to say that breach by one party never discharges the other party, regarding breach merely as a wrong without regard to the extent and quality of its ill effects." From Section 1254 (Page 17): "There is an often repeated doctrine to the effect that any wilful breach by one contractor discharges the other from further duty, without regard to the extent or materiality of the performance that is wilfully refused or withheld. The harshness with which such a rule as this would often operate, grossly penalizing the one party for a comparatively slight harm to the other, has generally been avoided, either by making no reference to the doctrine at all or by strained interpretations of the word 'wilful.' It is generally true that, in cases where the doctrine is expressly relied on, the breach is not only wilful but is also material in character and extent; frequently the breach that the court has in mind is a wilful and total abandonment.

But if the doctrine is strictly and honestly applied, in a case where one party wilfully commits a slight and immaterial breach, then there is a discharge by wilful breach, even though the nonperformance is one that would not in itself have been of the essence and there is no discharge by failure of consideration or by nonperformance of a condition. This is not justice."